```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NORTH DAKOTA
                   NORTHEASTERN DIVISION
```

BRUCE ROGER MILLS, individually  )
and on behalf of those           )
similarly situated,              )
                                 )
            Plaintiff,           )
                                 )   Civ. No. 2:08-CV-30
    v.                           )
                                 )
CITY OF GRAND FORKS,             )
                                 )
            Defendant.           )

### MEMORANDUM OPINION AND ORDER

The Defendant City of Grand Forks ("the City") has moved for judgment on the pleadings, arguing the Plaintiff Bruce Roger Mills ("Mills") has failed to raise any federal constitutional violations (doc. #9). Mills asserts the City's traffic fine schedule was illegal prior to the North Dakota Supreme Court's recent decision in Sauby v. City of Fargo, 2008 ND 60, 747 N.W.2d 65. For reasons set forth below, the Court holds Mills has failed to raise any federal constitutional violations, and thus it **GRANTS** the City's motion on each of Mills' three counts.

**I.   Facts**

The City is a home rule charter city governed by chapter 40-05.1 of the North Dakota Century Code. Prior to the North Dakota Supreme Court's holding in Sauby, the City imposed fines for traffic violations that exceeded those set forth under N.D. Cent. Code § 39-06.1-06. In doing so, the City claims it relied upon two North Dakota Attorney General opinions which provided that

1

home rule cities may establish fees for traffic violations that exceed the fees set forth under N.D. Cent. Code § 39-06.1-06. See generally N.D. Op. Atty. Gen. 82-62 (Aug. 19, 1982); N.D. Op. Atty. Gen. 2001-F-07 (Jul. 20, 2001).  The North Dakota Supreme Court's decision in Sauby, however, established that home rule cities are precluded from superseding criminal or noncriminal offenses defined by state law.

Mills sued the City in March 2008 on behalf of himself and others similarly situated after the North Dakota Supreme Court's decision in Sauby.  His action was based upon a citation he received from a City Police Officer on July 7, 2004 for Careless Driving.  After trial, the municipal judge imposed a sentence consisting of a fine in the amount of $151.00 and a hearing fee of $15.00, for a total of $166.00.  Despite the City's ordinance providing for a maximum fine of $1,000, the maximum penalty authorized under North Dakota state law for a careless driving violation was $30.00.  Upon appeal to the District Court of Grand Forks County, District Judge Lawrence E. Janhke affirmed the conviction and total fine and fees of $166.00.  Mills subsequently filed a Notice of Appeal from Judge Janhke's order, but the North Dakota Supreme Court dismissed the appeal as not appealable under N.D. Cent. Code § 39.06.1-03(5).

In the present case, Mills alleges that the City deprived him of his constitutional rights secured by the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and by the Excessive Fines Clause of the Eighth Amendment.  The

City has moved for judgment on the pleadings, arguing the conduct of the City as alleged by Mills does not establish a federal constitutional violation.

**II.  Discussion**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law."  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  The Court "accept[s] as true all facts pleaded by the nonmoving party, and [the Court grants] all reasonable inferences from the pleadings in favor of the nonmoving party." Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 899 (8th Cir. 2006).  However, the Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

**A.  Due Process**

Mills claims he has been deprived of his constitutional right to due process of law by the City's traffic fine scheme. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  In

analyzing a substantive due process claim, courts consider whether the plaintiff possesses a right arising under the Fourteenth Amendment and whether the defendant deprived the plaintiffs of that right within the meaning of the Due Process Clause. Ganley v. Minneapolis Park and Recreation Bd., 491 F.3d 743, 749 (8th Cir. 2007). To meet their burden, the plaintiffs "must demonstrate that the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." Id. See also Rivera v. Illinois, _ S. Ct. _, No. 07-9995, 2009 WL 815033, at *8 (March 31, 2009) ("[E]rrors of state law do not automatically become violations of due process."). "Truly irrational" conduct has also been defined as conduct that is "conscience shocking, in a constitutional sense." Skokos v. Rhoades, 440 F.3d 957, 962 (8th Cir. 2006)(quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)).

The City argues its establishment and collection of non-criminal traffic fees in excess of those for similar violations under state law was not egregious or truly irrational. Furthermore, the City asserts that prior to the North Dakota Supreme Court's decision in Sauby, it reasonably and justifiably relied upon two North Dakota Attorney General opinions. According to the first of these opinions, "Where a home rule city charter and ordinances provides for fees for violations of city ordinances regulating motor vehicles and traffic in amounts exceeding the limits stated in Section 39-06.1-06, N.D.C.C., the

4

state law shall be superseded by the home rule city ordinance only within the jurisdiction of the city." N.D. Op. Atty. Gen. 82-62 (Aug. 19, 1982). The second opinion, though analyzing a different issue, also concluded that home rule cities may supersede state law when dealing with a non-criminal offense. N.D. Op. Atty. Gen. 2001-F-07 (Jul. 20, 2001). This is precisely what occurred in this case, the City argues, as Mills was found guilty of committing a non-criminal traffic offense established pursuant to City ordinance in accordance with the City's home rule charter.[1]

In response, Mills repeatedly emphasizes that the City's fee scheme was not authorized by statute, and was therefore illegal. According to Mills, the City cannot claim it relied upon the North Dakota Attorney General opinions because it should have known its system of fines was unauthorized under state law after the North Dakota Supreme Court's decision in City of Fargo v. Little Brown Jug, 468 N.W.2d 392 (N.D. 1991). In Little Brown Jug, Mills argues, the Court established that a city can set forth no greater penalty than that imposed by state law. The City responds that Little Brown Jug is inapposite because it only

---

[1] In Sauby, the North Dakota Supreme Court determined that the North Dakota Attorney General opinions, while entitled to respect, were not persuasive in this case. 2008 ND 60, at ¶ 12. Rather, the Court concluded that the Attorney General had misinterpreted Section 12.1-01-05, which the Court read to prohibit the supersession of both state criminal and non-criminal offenses. Id. at ¶ 10.

5

addressed criminal offenses, unlike the non-criminal offenses at issue here and in the North Dakota Attorney General opinions.

Although <u>Little Brown Jug</u> raised equal protection concerns which will be discussed below, it did not stand for the proposition that a city may not supersede state law for all offenses, contrary to Mills' assertion.  Rather, <u>Little Brown Jug</u> only addressed criminal offenses, and it left open the question of whether a city may supersede state law as to non-criminal offenses.  This is made explicitly clear by the North Dakota Supreme Court's pronouncement in <u>Sauby</u> that "[t]his is the first time this Court has considered whether noncriminal municipal offenses may supersede state law."  2008 ND 60, at ¶ 11.  Thus, Mills' argument that the City was charged with knowing its ordinances were invalid after <u>Little Brown Jug</u> are not convincing because the North Dakota Supreme Court itself stated that it did not decide the issue for the first time until <u>Sauby</u>.

While Mills' <u>Little Brown Jug</u> argument fails, he also asserts that the City was placed on notice of the illegality of its traffic ordinance as a result of Judge Backes' 2001 Memorandum Opinion in <u>City of Fargo v. Cose</u>, No. 09-01-K-1578 (N.D. Dist. Ct., E. Cent. Jud. Dist. Aug. 30, 2001).  Mills points out that the City specifically denied having knowledge of two other East Central Judicial District cases, while it did not specifically deny it had knowledge of <u>Cose</u>.  This serves as an issue of fact, according to Mills, regarding what and when the City knew about its illegal traffic scheme.  Furthermore, Mills claims, the Memorandum Opinion is a judicial decision that serves

6

as part of the common law, and as such, the City was bound to adhere by its holding.

The City argues, and the Court agrees, that whether or not it had notice of Judge Backes' decision is largely irrelevant because the decision would not have been binding. "A trial court decision, particularly one in a different case and from another jurisdiction, is not authoritative." United Accounts, Inc. v. Teladvantage, Inc., 524 N.W.2d 605, 606 (N.D. 1994). This is particularly true here because the decisions cited by Mills were unpublished, which lessens the impact of any imputed knowledge argument he may have maintained.

Mills' argument regarding imputed knowledge seems more of an attempt to paint his case in the same light as Sauby v. City of Fargo, Civ. No. 3:07-cv-10, 2008 WL 3823720 (D.N.D. Aug. 13, 2008), in which this Court ruled in favor of allowing the plaintiff's constitutional claims to proceed. However, the fulcrum of the due process analysis in that case was the City's blatant disregard of the three East Central District Court decisions. In this case, there simply was no judicial mandate to alert the City of its illegal fine schedule until the North Dakota Supreme Court's decision in Sauby, immediately after which the City discontinued its traffic fine schedule. With no binding court decisions impacting the City, it was left to rely upon the North Dakota Attorney General opinions discussed above. Ballensky v. Flattum-Riemers, 2006 ND 127, ¶ 26, 716 N.W.2d 110, 119 ("Formal opinions of the attorney general are entitled to respect, and courts should follow them if they are persuasive.").

7

See also Fargo Women's Health Org. v. Schafer, 18 F.3d 526, 530 (8th Cir. 1994)("The Supreme Court of North Dakota has held that an Attorney General's opinion has the force and effect of law until a contrary ruling by a court.")(citing Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355, 364 (1945)).

Even if the City was wrong by relying upon the North Dakota Attorney General opinions, the Court cannot say its actions in doing so were truly irrational. See WMX Technologies, Inc. v. Gasconade County, Missouri, 105 F.3d 1195, 1200 (8th Cir. 1997) ("A violation of state law remains only a violation of state law and does not amount to the kind of "truly irrational" governmental action which gives rise to a substantive due process claim") (citing Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992)).  The Court believes the City's reliance upon the opinions was rational, and consequently, it was not "so 'arbitrary' or 'conscience-shocking' as to violate due process."  Ganley, 491 F.3d at 749 (citation omitted).  As a result, the Court **GRANTS** the City's motion for judgment on the pleadings with respect to Mills' due process claim.

**B.   Equal Protection**

Mills next asserts the City violated his equal protection rights by establishing and collecting fees for non-criminal traffic violations in excess of those allowed by state law.  The Equal Protection Clause of the Fourteenth Amendment states, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  In


other words, the Equal Protection Clause directs that all similarly-situated persons be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). When a case involves an inherently suspect class or a fundamental right, the courts apply strict-scrutiny review. Executive Air Taxi Corp. v. City of Bismarck, N.D., 518 F.3d 562, 566 (8th Cir. 2008). However, when the plaintiffs are not members of a suspect class and their case does not involve fundamental rights, the courts apply rational basis review. Ganley, 491 F.3d at 747. "Under this review, a court must reject an equal protection challenge to a statutory classification if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. This case does not involve a suspect classification or fundamental right, so the Court applies rational-basis scrutiny.[2]

As a threshold matter, the court must inquire whether Mills established he was treated differently from others similarly situated. Creason v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006). Mills argues his equal protection claim stems from the City's policy of giving unbridled, arbitrary authority to compel him to pay an illegal fine for the same conduct in which the state punishes with a lesser fine. According to Mills, he is

---

[2] Mills suggests he was deprived of his rights to property, liberty, and travel. However, Mills fails to sufficiently support this proposition, nor are these fundamental rights actually implicated. The City's fine schedule did not restrict these rights; rather, it punished unlawful activity.

denied equality of law if the punishment is left to the "arbitrary whim" of the officer that cites him.

Of particular note to this issue is the parties' dispute regarding the import of United States v. Batchelder, 442 U.S. 114 (1979). The City argues that under Batchelder, any discretion exercised by law enforcement in deciding whether to charge under state or municipal law is permissible, and any influence in that decision based on possible penalties upon conviction is immaterial. Batchelder, 442 U.S. at 124-25. See also Engquist v. Oregon Dept. of Agr., 128 S. Ct. 2146, 2154 (2008) (discussing the difference between the impermissibility of enforcing speeding limits on the basis of discriminatory classifications and the permissibility involved in general law enforcement discretion). According to the City, the United States Supreme Court held in Batchelder that duplicative statutes containing overlapping definitions of the same criminal conduct and identical elements of proof, but providing differing penalties, do not violate equal protection principles. Id. at 125. Mills responds that the statutory scheme is different in this case because only the state statute has a legal sentencing provision that can be applied. The City's traffic fine scheme, Mills argues, is illegal and provides "unfettered" discretion to the officer to punish drivers differently who are stopped in the same location.

The Court remains mindful of the North Dakota Supreme Court's warning in Little Brown Jug regarding this issue. While the North Dakota Supreme Court declined to decide the equal

10

protection issues at the time, it noted that constitutional questions may arise when a city's ordinance defines an offense in language similar to state law, but has a differing penalty. Little Brown Jug, 468 N.W.2d at 394 n.2.  Little Brown Jug cited a Washington case which held that "[t]he constitutional flaw in such a statute is that it vests in the charging authorities unbridled discretion to charge an offender with either of two crimes, resulting in different sentences for the same offense." Id. (citing City of Seattle v. Hogan, 766 P.2d 1134, 1136 (Wash. App. 1989).

However, the Court need not decide whether there exists a classification of similarly-situated persons sufficient for an equal protection challenge, because even assuming there is, Mills fails to establish there was no rational basis for the City's actions.  The City has several plausible reasons for imposing its traffic fee schedule, including a legitimate interest in protecting the health and safety of its residents and in regulating the use of its streets.  Crum v. Vincent, 493 F.3d 988, 994 (8th Cir. 2007) (finding a rational basis where higher fees were charged on licensed professionals); Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430, 442-43 (8th Cir. 2007) (applying the deferential rational basis standard to reject an equal protection claim where the legislature's decision had a conceivable basis to support it); Creason, 435 F.3d at 824 n.3 (holding the city had a rational basis for not applying special assessments in a uniform manner against landowners).

11

Moreover, as discussed above, the City did not have any judicial mandate disallowing it from continuing its traffic fine schedule until the North Dakota Supreme Court's decision in Sauby. 2008 ND 60, at ¶ 11. Thus, unlike this Court's decision in Sauby, the City's reliance here on the North Dakota Attorney General opinions was rational. Therefore, the City's higher fine schedule passes rational basis scrutiny, and the Court **GRANTS** the City's motion for judgment on the pleadings with respect to Mills' equal protection claim.

### C.  Excessive Fines

Lastly, Mills alleges the City's establishment and collection of fees for non-criminal traffic offenses in excess of those provided under state law violates the Excessive Fines Clause of the Eighth Amendment. The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. XIV, § 1. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334 (1998).

The Eighth Circuit applies a two-pronged test for excessive fine claims: (1) the claimant must make a prima facie showing of gross disproportionality; and (2) if this showing is made, the court considers whether the disproportionality is of such a level

12

that the punishment is more criminal than the crime.  <u>United States v. Dodge Caravan</u>, 387 F.3d 758, 763 (8th Cir. 2004).  In making this conclusion, the Court must consider:

> the extent and duration of the criminal conduct, the gravity of the offense weighed against the severity of the criminal sanction, . . . the value of the property forfeited[,] . . . the personal benefit reaped by the defendant, the defendant's motive and culpability . . . , the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct[,] the monetary value of the property, the extent of the criminal activity associated with the property, the fact that the property was a residence, the effect of the forfeiture on innocent occupants of the residence, including children, or any other factors that an excessive fine analysis might require.

<u>Id.</u>  Because of the nature of traffic violations and fines, many of these factors do not apply to this case.

The City argues the fine imposed upon Mills did not violate the Excessive Fines Clause for a number of reasons.  First, his conviction was upheld and there is no dispute regarding his culpability for careless driving.  Second, Mills' careless driving endangered the health, welfare, and safety of society.  The City restates its interest in protecting the welfare of society, and urges that its fine is directly related to punishment of unwanted behavior and deterring similar behavior by others.  Finally, the City claims its fine was consistent with fines imposed upon others for careless driving, and it was in the maximum limits of penalties imposed in neighboring Minnesota for the same offense.

Mills, on the other hand, asserts that the Court need not address the City's proportionality argument because he was

13

illegally fined. According to Mills, the proportionality test must be read in conjunction with the Due Process Clause, since judges only have discretion to impose sentences within statutory limits. Therefore, similar to Mills' arguments advanced above, because the City's fine schedule was held to be in violation of state law, the City imposed an excessive fine when it imposed a fine in an amount greater than allowed by statutory law.

The Court once again rejects Mills' argument regarding the illegality of the City's traffic fine schedule. As stated above, the City's fine schedule was not deemed to be in violation of state law until the North Dakota Supreme Court's decision in <u>Sauby</u>. 2008 ND 60, at ¶ 11. Immediately after this decision, the City stopped enforcing traffic fines in excess of those provided under state law. Based on these facts, it is not enough to simply say the City's traffic fine schedule was illegal from its inception, and that the City's collection of fines therefore violated the Excessive Fines Clause. Rather, it is appropriate for the Court to engage in the two-pronged analysis set forth by the Eighth Circuit when analyzing excessive fines cases.

After careful consideration of each of the factors identified above, the Court concludes that Mills has not established a prima facie case of gross disproportionality. The reports prepared by law enforcement officers demonstrate the severe nature and extent of Mills' careless driving infraction. Furthermore, the Court agrees with the City that it has a duty to protect its citizens and that a relatively minor traffic

14

violation in an urban area can have much greater consequences than one in a rural area. Qwest Corp. v. Minn. Pub. Util. Com'n, 427 F.3d 1061, 1069-70 (8th Cir. 2005) (holding the penalty was not excessive in light of the resulting harm). Weighed against these factors, the Court cannot conclude the City's former fine schedule was grossly disproportional in a constitutional sense. Even if the fines were grossly disproportional, the Court could not conclude the fines are more criminal than the violation itself. Mills has thus failed to raise an excessive fines claim under the Eighth Amendment, and the Court **GRANTS** the City's motion for judgment on the pleadings with respect to this claim.

### III. Conclusion

The City's Motion for Judgment on the Pleadings is **GRANTED**. Mills has failed to raise any federal constitutional violations which are necessary for this Court to provide any legal relief. Accordingly, all three counts of Mills' complaint are **DISMISSED**.

**IT IS SO ORDERED.**

Dated this 15th day of April, 2009.

*/s/ Rodney S. Webb*
RODNEY S. WEBB, District Judge
United States District Court

15